# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID L. KULL,

      Plaintiff-Appellant,

v

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

      Defendant-Appellee.

UNPUBLISHED
January 31, 2017

No. 329748
Livingston Circuit Court
LC No. 15-028492-NF

Before: M. J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Plaintiff David Kull appeals as of right an order granting summary disposition under MCR 2.116(C)(10) in favor of defendant Unites Services Automobile Association (USAA). The trial court determined that Kull was not entitled to personal protection insurance (PIP) benefits under Michigan's no-fault act, MCL 500.3101 *et seq*., because his conduct did not fit any of the parked vehicle exceptions in MCL 500.3106(1) and because the motor vehicle at issue, a boat trailer, did not cause his injury. We reverse and remand for entry of an order granting summary disposition in favor of Kull.

## I. BASIC FACTS

On May 23, 2014, Kull's ring finger was seriously injured while he was getting off a boat on a boat trailer. According to Kull's deposition testimony, he had towed the boat and boat trailer to a lake in order to launch it. When he arrived, he parked his vehicle and began preparing to launch the boat. As part of that process, he was on or in the boat, retrieved a plug for the boat, and then slid down the side of the boat with the immediate intent of retrieving a wrench from inside his vehicle. As he was sliding off the boat, his wedding ring caught on a snap on the boat and was "ripped off."[1] After USAA denied his claim for no-fault benefits, Kull filed the instant lawsuit. The parties filed competing motions for summary disposition, and, as indicated above, the circuit court granted USAA's motion.

---

[1] Kull explained that his finger was "degloved" and had to be amputated.

-1-

## II. PARKED VEHICLE EXCEPTION

### A. STANDARD OF REVIEW

Kull argues that the trial court erred in denying his motion for summary disposition and granting USAA's motion for summary disposition. We review de novo a trial court's decision to grant or deny summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). In doing so, we view the record in the light most favorable to the nonmoving party. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Further, we review de novo questions of law, including the application and interpretation of statutes. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

### B. ANALYSIS

Under the no-fault act, Kull's trailer is defined as a motor vehicle. See MCL 500.3101(1)(h) (" 'Motor vehicle' means a vehicle, including a trailer, that is operated or designed for operation on a public highway by power other than muscular power and has more than 2 wheels. . . ."). MCL 500.3105(1) provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." With regard to a parked motor vehicle, MCL 500.3106(1) provides that "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle," except in the following three situations:

> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

> (b) . . . [T]he injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

> (c) . . . [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

In this case, the parties agree that the trailer was parked when Kull was injured. To be covered for an injury involving a parked vehicle, a claimant must establish the following:

> (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle, and (3) the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for. [*Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 635-636; 563 NW2d 683 (1997).]

Kull argues that his conduct fits the exception in 3106(1)(c) because he was alighting from the vehicle when his injury occurred. In *Frazier v Allstate Ins Co*, 490 Mich 381, 385-386; 808 NW2d 450 (2011), our Supreme Court addressed what it means to alight from a vehicle:

> With respect to MCL 500.3106(1)(c), "alight" means "to dismount from a horse, descend from a vehicle, etc." or "to settle or stay after descending; come to rest." *Random House Webster's College Dictionary* (1997). See also *New Shorter Oxford English Dictionary* (defining "alight" as "to descend and settle; come to earth from the air"). Moreover, the injury must be sustained "while" alighting indicates that "alighting" does not occur in a single moment but occurs as the result of a process. The process begins when a person initiates the descent from a vehicle and is completed when an individual has effectively "descend[ed] from a vehicle" and has "come to rest"—when one has successfully transferred full control of one's movement from reliance upon the vehicle to one's body. This is typically accomplished when "both feet are planted firmly on the ground." *Krueger v Lumbermen's Mut Cas Co*, 112 Mich App 511, 515; 316 NW2d 474 (1982). [Alterations in original; footnotes omitted.]

Here, at the time Kull was injured, he was in mid-slide and his feet were not yet planted firmly on the ground. Thus, he was clearly alighting at the time he was injured. Further, although USAA argues that Kull was alighting from the boat, not the trailer, we do not find that fact dispositive. Kull's testimony shows that his intent was to alight from the trailer, retrieve a wrench from another vehicle, and walk around to the rear of the boat to continue preparing the boat for launch. Thus, when he alighted from the boat he was also alighting from the trailer.[2] The trial court erred in finding that MCL 500.3106(1)(c) did not apply.

The next question is whether Kull's injury arose out of the ownership, operation maintenance, or use of the parked motor vehicle as a motor vehicle. The "nexus between the injury and the use of the vehicle as a motor vehicle" must be "sufficiently close" to justify recovery of benefits. *Putkamer*, 454 Mich at 635 (citation omitted). In other words, "[w]hether an injury arises out of the use of a motor vehicle 'as a motor vehicle' " for purposes of MCL 500.3106 "turns on whether the injury is closely related to the transportational function of automobiles." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 215; 580 NW2d 424 (1998). In analyzing whether a motor vehicle was being used "as a motor vehicle," the *McKenzie* Court noted that "the Motor Vehicle Code states in pertinent part, " 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway. . . .' " *Id*. at 219, quoting MCL 257.79. Further, the Court stated that the dictionary definition of "vehicle" is "any device or contrivance for carrying or conveying persons or objects, esp. over land or in space. . . ." *Id*., quoting *Webster's New World Dictionary* (3rd College Edition).

---

[2] It would be a different situation if Kull intended to slide from the boat to the trailer and then stay on the trailer. In that situation, alighting from the boat would not be the equivalent of alighting from the trailer because the trailer, not the ground, would be Kull's intended end destination.

The Court gave two examples of when a plaintiff's injury was closely related to a vehicle's transportational function. First, and most obviously, the Court held that "moving motor vehicles are quite obviously engaged in a transportational function." *Id*. at 221. The Court added, however, a motor vehicle does not have to be in motion in order for an injury to arise from its transportational function. *Id*. at 219 n 6.[3] Second, with regard to parked vehicles, the Court reasoned that a person entering a vehicle in order to travel in it was an action that was closely related to the motor vehicle's transportational function. *Id*. at 221, citing *Putkamer*, 454 Mich at 636-637.

The Court also gave several examples of when an injury was not closely related to a vehicle's transportational function. First, the Court explained that a vehicle was not being used "as a motor vehicle" if it was being used as housing, as an advertising display, as a mobile public library, or as a museum display. *Id*. at 218-219. Additionally, the Court noted that injuries arising from assaults on people in motor vehicles were not injuries closely related to the transportational function of a motor vehicle. *Id*. at 222, citing *Thornton*, 425 Mich 643, 660-661; 391 NW2d 320 (1986) and *Bourne v Garmers Ins Exch*, 449 Mich 193, 203; 534 NW2d 491 (1995). Likewise, an injury caused by a cement slab falling from a crane attached to a parked tow truck was also not closely related to the transportational function of a motor vehicle because the truck in that example was being used as a foundation for construction equipment. *Id*. at 221, citing *Winter v Auto Club of Mich*, 433 Mich 446; 446 NW2d 132 (1989). The Court also overruled the holding in *Bialochowski v Cross Concrete Pumping Co*, 428 Mich 219; 407 NW2d 355 (1987). *McKenzie*, 458 Mich at 223-224. In *Bialochowski*, the plaintiff was injured when a concrete pump permanently mounted to a motor vehicle exploded while it was being used to pump cement. *Bialochowski*, 428 Mich at 222-223, 228. The *Bialochowski* Court held that because the cement truck was being used for one of its intended purposes, it was being used "as a motor vehicle" as required by MCL 500.3105(1). *Id*. at 228-229. In overruling *Bialochowski*, the *McKenzie* Court held that a dual-purpose vehicle cannot simply be used for an intended purpose it must be used for its transportational purpose. *McKenzie*, 428 Mich at 223-226. Thus, the *McKenzie* Court held that an injury occurring while unloading a cement truck was not closely related to the vehicle's transportational function.

In this case, Kull testified that he had towed the boat trailer to the lake so that he could launch it. While the trailer was moving, it was plainly being used for its transportational purpose, i.e., conveying objects over land. Further, the transportational function of a vehicle does not have a set beginning and a set end because, as recognized by the Supreme Court in *McKenzie*, the motor vehicle does not have to be in motion in order for an injury to arise from its transportational function. *Id*. at 219 n 6. Kull testified that after arriving at the lake, he started preparing the boat for launch and that he intended to back the trailer up to the water in order to do so. Thus, it is clear that the transportational function of the trailer, conveying the boat over land to its end destination, had not yet ended when Kull was injured while alighting from the

---

[3] A requirement that a motor vehicle must be moving in order to function as a motor vehicle would be contrary to the legislative intent expressed in 3106, i.e., that a parked vehicle can be used as a motor vehicle. See MCL 500.3106(1).

trailer. As a result, his use of the trailer was closely related to the transportational function of the trailer.[4]

USAA argues that Kull's injury was not caused by the trailer. In *Thornton*, 425 Mich at 659-660, our Supreme Court explained that the mere involvement of a motor vehicle in an injury is not sufficient to entitle a claimant to PIP benefits. Instead, the plain language of MCL 500.3105(1) reflects the Legislature's intent "to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.'" *Id*. at 659. That is, "[t]he involvement of the car in the injury should be directly related to its character as a motor vehicle." *Id*. at 659-660 (citation omitted).

Kull's attempt to alight from the boat by sliding down the side may have been unorthodox, but it does not appear to have been unreasonable. In *Krueger v Lumberman's Mut Cas Co*, 112 Mich App 511, 516-518; 316 NW2d 474 (1982), this Court found coverage under 3106(1)(c) when a plaintiff was alighting from a delivery van and stepped into a pothole. We explained that there was a sufficient causal connection because "an injury caused by stepping into a hole in the road is foreseeably identifiable with the process of alighting from a vehicle" and "[s]uch road hazards are hardly unusual or unexpected." *Id*. at 516-517. Likewise, we found coverage when a plaintiff slipped on a plastic bag in the stairway of the exit of a city bus while alighting from it. *Harris v Grand Rapids Area Transit Auth*, 153 Mich App 829, 832; 396 NW2d 554 (1986). And in *Putkamer*, when the plaintiff slipped on a patch of ice while entering her vehicle, we found coverage, reasoning:

> In the instant case, there is no dispute that plaintiff was entering the vehicle when she slipped on some ice and was injured. Moreover, there is no dispute that plaintiff was entering the vehicle with the intention of traveling to her brother's home. Hence, as a matter of law, she was using the parked motor vehicle as a motor vehicle when she was entering the vehicle. [*Putkamer*, 454 Mich at 636.]

Similarly, the involvement of the trailer in Kull's injury was not merely incidental, fortuitous, or but for. Under the circumstances of this case, Kull was alighting from the boat while using it for its transportational function. Thus, like the plaintiff in *Harris* who slipped on a plastic bag while alighting and like the plaintiff in *Krueger* who tripped on a pothole while alighting, there was a sufficient causal connection between the injury and the trailer's character as a motor vehicle.

In sum, applying the *Putkamer* test to the instant facts, Kull was entitled to PIP benefits under 3105(a) and 3106(1)(c).

---

[4] The dissent's reliance on the *McKenzie* Court's treatment of *Bialochowski* is misplaced. Unlike the cement truck in *Bialochowski* which had reached its end destination and was being unloaded, the trailer was still engaged in its transportational function at the time Kull was injured because the trailer and its cargo had not yet reached its end destination.

Reversed and remanded for entry of an order granting summary disposition in favor of Kull. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens