UNIVERSITY REHABILITATION ALLIANCE, INC
v FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN

Docket No. 272615. Submitted November 15, 2007, at Lansing. Decided
July 22, 2008, at 9:10 a.m. Leave to appeal sought.

University Rehabilitation Alliance, Inc., brought an action in the
Ingham Circuit Court against Farm Bureau General Insurance
Company of Michigan, seeking no-fault personal protection
insurance (PIP) benefits relating to care provided to Kimberly
Sterling, an insured of the defendant. Sterling sustained injury
when she fell out of a moving car after jumping or being forced
out by her boyfriend. The defendant had initially denied the
claim for PIP benefits on the ground that PIP benefits are not
payable for injury from an assault. After the boyfriend was
acquitted of assault, the defendant paid benefits with interest,
but denied liability for the plaintiff's attorney fees. The court,
James R. Giddings, J., granted summary disposition for the
plaintiff on the claim for attorney fees calculated pursuant to a
contingent-fee agreement, ruling that the defendant had unrea-
sonably delayed paying benefits and that the contingent fee was
reasonable. The defendant appealed.

The Court of Appeals *held*:

1. An attorney is entitled to a reasonable fee for advising and
representing a claimant in an action for personal or property
protection insurance benefits that are overdue. MCL 500.3148(1).
An insurer's delay in making payments under the no-fault act is
not unreasonable if it is based on a legitimate question of statutory
construction, constitutional law, or factual uncertainty. In this
case, the trial court did not err in determining that the defendant's
initial refusal to pay benefits had been unreasonable. Sterling
sustained accidental bodily injury arising out of the operation of a
motor vehicle as a motor vehicle. There was no evidence that
Sterling had intentionally attempted to harm herself so as to
preclude benefits. MCL 500.3105(4). Sterling's injuries directly
resulted from falling out of the motor vehicle while it was being
used for transportation.

2. The trial court did not abuse its discretion by awarding the
contingent fee as a reasonable attorney fee. The no-fault act

provides for an award of reasonable attorney fees to a claimant if the insurer unreasonably refused to pay the claim. MCL 500.3148(1). A reasonable fee under MCL 500.3148(1) is determined by considering the totality of the circumstances, and a contingent fee is neither presumptively reasonable nor presumptively unreasonable. The attorney-fee award in this case was within the range of reasonable and principled outcomes. The trial court considered (1) the professional standing and experience of the plaintiff's attorneys, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client. The trial court also correctly determined that the defendant created the situation that prompted the contingent-fee agreement and that not awarding the contingent fee would reward the defendant and punish the plaintiff.

Affirmed.

HOEKSTRA, J., dissenting, would reverse the award of attorney fees, stating that the defendant's delay in paying benefits was not unreasonable, given caselaw exempting from no-fault coverage all injuries resulting from an assault occurring in a motor vehicle.

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — ACCIDENTAL BODILY INJURY — MOTOR VEHICLES.

An insured who did not intend self-inflicted injury when falling or being forced out of a moving motor vehicle being used for transportation, if injured, will have sustained accidental bodily injury for purposes of personal protection insurance coverage under the no-fault act (MCL 500.3105[1], [4]).

2. INSURANCE — NO-FAULT — INSURER'S DELAY IN PAYING BENEFITS — ACTIONS — ATTORNEY FEES.

A reasonable attorney-fee award for a plaintiff in an action against a no-fault insurer that has unreasonably delayed paying no-fault benefits is determined by considering the totality of the circumstances; a contingent fee is neither presumptively reasonable nor presumptively unreasonable (MCL 500.3148[1]).

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *George T. Sinas, Timothy J. Donovan,* and *Steven A. Hicks*), for the plaintiff.

*Willingham & Coté, P.C.* (by *Toree J. Breen* and *Matthew K. Payok*), for the defendant.

Before: DONOFRIO, P.J., and HOEKSTRA and MARKEY, JJ.

MARKEY, J. Defendant appeals by right the order granting summary disposition to plaintiff and awarding plaintiff attorney fees in this no-fault insurance case. We affirm.

This case arose when Kimberly Sterling was either pushed from or jumped out of a moving motor vehicle, hit the ground, and sustained serious brain injuries. Defendant, Sterling's no-fault insurer, originally refused to pay plaintiff's claim for no-fault benefits because it asserted that injuries resulting from assaults are exempt from any no-fault coverage. After Sterling's boyfriend was acquitted of assault, defendant agreed to pay the claim with interest, but denied that it owed attorney fees. The trial court ruled that the original denial was unreasonable because even if Sterling had been assaulted, the claim would not be barred: the injuries occurred because Sterling fell out of the moving vehicle while the vehicle was being used for transportation. The trial court later determined that the 25 percent contingent fee to which plaintiff agreed was fair and granted plaintiff attorney fees consistent with the contingent-fee agreement.

The trial court's decision to grant or deny attorney fees under the no-fault act presents a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*. We review de novo questions of law, but review the trial court's findings of fact for clear error. *Id*. A finding is clearly erroneous where this Court is left with the definite and firm conviction that a mistake has been made. *Id*.

An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [MCL 500.3148(1).]

An insurer's delay in making payments under the no-fault act is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. *Ross, supra* at 11. Whether attorney fees are warranted under the no-fault act depends not on whether coverage is ultimately determined to exist, but on whether the insurer's initial refusal to pay was unreasonable. If an insurer refuses to pay or delays paying no-fault benefits, the insurer must meet the burden of showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. *Id.*

Under MCL 500.3105(1), no-fault personal protection insurance (PIP)[1] benefits are payable for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(4) provides that bodily injury "is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant." Thus, injuries to a person can be "accidental" for purposes of PIP benefits where the *injured person* is not complicit in causing the injury even if another person

---

[1] "What are commonly called 'PIP benefits' are actually personal protection insurance (PPI) benefits by statute. MCL 500.3142. However, lawyers and others call these benefits PIP benefits to distinguish them from property protection insurance benefits." *Roberts v Farmers Ins Exch*, 275 Mich App 58, 66 n 4; 737 NW2d 332 (2007).

intentionally caused the injury. See *Detroit Automobile Inter-Ins Exch v Higginbotham*, 95 Mich App 213, 220; 290 NW2d 414 (1980). Here, defendant has never claimed that it initially denied benefits because Sterling intended to injure herself. Instead, it asserted that no-fault benefits are not payable for injuries arising from assaults. This is a crucial fact because, as noted above, the insurer must show that its refusal or delay stemmed from a legitimate question of statutory construction, constitutional law, or factual uncertainty. See, e.g., *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 201; 536 NW2d 784 (1995).

In order for an injury to arise out of the use of a motor vehicle as a motor vehicle, and thus be entitled to coverage for purposes of PIP benefits, the injury must be "closely related to the transportational function of automobiles." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 215; 580 NW2d 424 (1998).

Defendant essentially argues that because it initially did not know whether Sterling was assaulted or fell out of the vehicle, it did not unreasonably deny benefits at the outset because PIP benefits are not payable for injuries from assaults. In particular, defendant emphasizes the statement in *McKenzie, supra* at 222, that the holdings in *Thornton v Allstate Ins Co*, 425 Mich 643, 660-661; 391 NW2d 320 (1986), and *Bourne v Farmers Ins Exch*, 449 Mich 193, 203; 534 NW2d 491 (1995), "support the approach articulated here because assaults occurring in a motor vehicle are not closely related to the transportational function of a motor vehicle." Any argument, however, that this language supports defendant's initial denial of PIP benefits here as reasonable because Sterling claimed that her injuries occurred when she was pushed out of a moving vehicle, i.e., assaulted, requires this language to be read totally

out of context. Moreover, the language taken out of context also conflicts with the clear language of the statute, and the circumstances in *Thornton* and *Bourne* differ considerably from Sterling's version of events in the present case. Nor do those cases provide the requisite legal support for defendant's position. In particular, *Thornton* involved a taxi driver who was shot by a passenger who had called his cab in order to rob him. *Thornton, supra* at 646.

*Bourne* involved a man who was forced by two men at gunpoint to drive to a location where one of the assailants struck him and threw him to the ground. They then drove away in the injured man's car. *Bourne, supra* at 196. In both cases the injuries were inflicted by means that did not directly involve the use of a motor vehicle, i.e., the gunshot in *Thornton* and the physical attack outside the vehicle in *Bourne*. Rather, the motor vehicle involved in *Thornton* was simply where the victim was shot, a situation no different from a home's being the site of a crime. And in *Bourne,* the assailants used the vehicle to transport the victim to the location of the assault. Thus, the essence of *Thornton* and *Bourne* is that where a motor vehicle is merely the location of an assault or a backdrop of an assault, there is insufficient connection between the injuries and the use of a motor vehicle as a motor vehicle to impose liability for PIP benefits under MCL 500.3105(1). There is, however, no rule precluding PIP benefits for injuries resulting from an assault. The present case is markedly distinguished from *Thornton* and *Bourne* because Sterling's injuries directly resulted from her falling out of the motor vehicle while it was in motion and being used for transportation. Nor has there ever been any suggestion or evidence that she intentionally attempted to harm herself; consequently, Sterling suffered an accidental injury as defined by MCL 500.3105(4).

Moreover, in *McKenzie*, our Supreme Court stated that "moving motor vehicles are quite obviously engaged in a transportational function." *McKenzie, supra* at 221. Sterling's injuries were a direct result of the vehicle's movement, not merely incidental to it. Unlike getting out of a stopped car, getting out of a car while it is being driven is extremely hazardous and likely to result in injury. Whether Sterling was pushed or stepped out, her head trauma was patently the direct result of her getting or being forced out of a moving vehicle, not simply a direct result of being shoved by the driver (if that actually occurred). Thus, even if there had been an assault, Sterling's injuries would still be a direct result of being forced out of a moving vehicle. This means that the vehicle was not merely the location of an assault: The use of the motor vehicle for transportation was closely related to, and indeed was a direct, active cause of, Sterling's injuries. So, regardless of whether she was shoved out or voluntarily got out of the vehicle, there is no evidence that Sterling intended to hurt herself, and her injuries were directly related to the use of the vehicle as a mode of transportation. Defendant's argument that it delayed in paying the benefits because it believed that injuries resulting from assaults were not covered by the no-fault statute is inconsistent with the plain language of the statute, nor is there any caselaw supporting or somehow overruling this plain language. Defendant's justification for delaying payment—ostensibly an attempt to construe the statutory language—does not satisfy the requisite burden of showing that the delay was the product of a legitimate question of statutory construction or either of the other two possible reasons. Consequently, at no time did defendant have a reasonable basis for denying plaintiff PIP benefits under the facts of this case and the plain language of the statute. Accordingly, the trial

court did not clearly err by ruling that defendant's initial denial of benefits was unreasonable.

Defendant next claims that the trial court erred when it set the amount of the reasonable attorney fee awarded under MCL 500.3148(1). Defendant argues that basing it on the contingent-fee agreement between plaintiff and its counsel was an abuse of discretion because the fee calculates to over $1,600 an hour for a case that turned out to be not very difficult. We disagree.

A trial court's determination of the reasonableness of an attorney-fee award is reviewed for an abuse of discretion. *Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982). "The no-fault act provides for an award of reasonable attorney fees to a claimant if the insurer unreasonably refuses to pay the claim." *Ross, supra* at 10-11. A trial court does not abuse its discretion when the result reached falls within the range of reasonable and principled outcomes. *Patrick v Shaw*, 275 Mich App 201, 204; 739 NW2d 365 (2007), citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Because the Legislature did not define or specify a method for determining "a reasonable attorney fee" under MCL 500.3148(1), our Supreme Court in *Wood, supra* at 588, adopted a multifactor analysis patterned after rules governing professional conduct that this Court had first used in another context. This Court opined in *Liddell v Detroit Automobile Inter-Ins Exch*, 102 Mich App 636, 651-652; 302 NW2d 260 (1981), quoting *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973):

"There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. See generally 3 Michigan Law & Practice, Attorneys and Counselors, § 44, p 275 and Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics."

The *Wood* Court observed that although "a trial court should consider the guidelines of *Crawley*, it is not limited to those factors in making its determination. Further, the trial court need not detail its findings as to each specific factor considered." *Wood, supra* at 588. In addition, "a contingent fee agreement may be considered as one factor in determining the reasonableness of a fee, [although] it is not by itself determinative." *Liddell, supra* at 652. The current pertinent rule of professional conduct lists "whether the fee is fixed or contingent" as one of eight factors to consider when determining whether an attorney fee is excessive or reasonable. MRPC 1.5(a)(8).

This Court in *Liddell, supra* at 651-652, rejected the claim that a contingent fee is always reasonable. But in *Hartman v Associated Truck Lines*, 178 Mich App 426, 430-431; 444 NW2d 159 (1989), this Court held that the trial court abused its discretion by not considering a contingent-fee agreement when determining a reasonable attorney fee. We also find instructive our Supreme Court's discussion in *Dep't of Transportation v Randolph*, 461 Mich 757; 610 NW2d 893 (2000), regarding reimbursement under the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*, of a property owner's reasonable attorney fee. The *Randolph* Court contrasted the specific multistep analysis required by

MCL 213.66(3)[2] with "other fee-shifting statutes that simply authorize the trial court to award 'reasonable attorney fees' without regard to the fees actually charged." *Randolph, supra* at 765-766. With statutes like MCL 500.3148(1), "the [trial] court is free to award *any* fee as long as it is reasonable." *Randolph, supra* at 766 (emphasis in the original). The *Randolph* Court instructed trial courts in determining reasonableness to "consider the eight factors listed in MRPC 1.5(a)" and rejected both a contingent fee as presumptively reasonable and also the so-called "lodestar" method of multiplying the reasonable number of hours worked by a reasonable hourly rate as the preferred way of determining the reasonableness of attorney fees. *Id.* at 766 n 11. Thus, a reasonable attorney fee is determined by considering the totality of the circumstances. While a contingent fee is neither presumptively reasonable nor presumptively unreasonable, multiplying the reasonable number of hours worked by a reasonable hourly rate is not the preferred method.[3]

---

[2] MCL 213.66(3) provides that "the court shall order reimbursement in whole or in part to the owner by the agency of the owner's reasonable attorney's fees, but not in excess of ⅓ of the amount by which the ultimate award exceeds the agency's written offer . . . ."

[3] We acknowledge that our Supreme Court has recently held in a plurality opinion that a trial court, when determining a reasonable attorney fee as part of case-evaluation sanctions under MCR 2.403(O), must first determine a "baseline" fee by multiplying the reasonable hourly rate—the fee customarily charged in the locality for similar legal services—by the reasonable number of hours necessitated by case-evaluation rejection. *Smith v Khouri*, 481 Mich 519, 522, 537; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). This "baseline" reasonable fee may then be adjusted upward or downward according to the factors in *Wood* and MRPC 1.5(a). *Smith* does not affect our analysis in this case of the question whether the trial court abused its discretion when determining a reasonable attorney fee under MCL 500.3148(1). First, *Smith* addressed MCR 2.403(O)(6)(b), which explicitly requires that the reasonable-attorney-fee portion of actual costs be based on a reasonable

Here, the trial court employed the multifactor analysis required by *Wood* and *Liddell* in ultimately concluding that the contingent-fee agreement between plaintiff and its attorneys established "a reasonable attorney fee" under MCL 500.3148(1). The court found that plaintiff's attorneys were highly qualified and skilled attorneys who obtained payment of $211,965 to plaintiff. Further, the court concluded that plaintiff's attorney's hourly rates were reasonable and that plaintiff could have incurred substantial attorney fees had plaintiff retained counsel on that basis and had defendant continued to contest coverage. Indeed, defendant's representative conceded that had Sterling's boyfriend been convicted of assault, defendant would have litigated coverage through trial and the appellate process, if necessary. Thus, although the case proved to be fairly short-lived and required only 30 hours of plaintiff's attorney's time through payment of the claim in full, the trial court weighed the potential for extensive litigation at an hourly rate as a reasonable reason for plaintiff to retain counsel on a contingent-fee basis. In essence, the trial court reasoned that defendant created the situation that prompted the contingent-fee agreement. So not awarding it as a reasonable attorney fee would reward defendant and punish plaintiff, a situation the court found would be fundamentally unfair. Ultimately, the trial court determined, "applying all the factors from *Wood*, I think the fee, in light of the result, in light of the testimony imminently [sic] fair and reasonable."

---

hourly or daily rate as determined by the trial court. Second, while two justices would have held that whether an attorney has a contingent-fee agreement with a client is not an appropriate factor when considering a reasonable attorney fee as a case-evaluation sanction, *Smith, supra* at 534 n 20, that part of the opinion is not binding precedent because a majority of justices did not agree. See *People v Sexton*, 458 Mich 43, 65; 580 NW2d 404 (1998); *Young v Nandi*, 276 Mich App 67, 71-72; 740 NW2d 508 (2007).

Defendant argues that plaintiff's attorneys were awarded as a reasonable attorney fee more than $50,000 for about 30 hours worth of work, amounting to more than $1,600 an hour when considered on an hourly basis. Although this amount is significantly higher than the $300 an hour top rate of plaintiff's attorneys, the trial court considered this fact, along with many others, in determining that the contingent-fee agreement represented a reasonable attorney fee under all the facts and circumstances of this case. In particular, it was defendant's actions that prompted plaintiff to enter the contingent-fee agreement. Whatever reasonable attorney fee the trial court determined under MCL 500.3148(1), plaintiff would still be required to honor the contingent-fee agreement. "Once the client recovers, however, the client is obligated to pay the attorney fees under the terms of the contingent fee agreement, notwithstanding the amount which a trial court may determine to be reasonable." *Hartman, supra* at 431. Consequently, we find no error in the trial court's reasoning that not awarding the contingent fee as a reasonable attorney fee would reward defendant and punish plaintiff for a situation that defendant created. Thus, the trial court did not abuse its discretion because awarding the contingent fee as a reasonable fee is within the range of reasonable and principled outcomes. *Patrick, supra* at 204.

The trial court also correctly ruled that *Temple v Kelel Distributing Co, Inc*, 183 Mich App 326; 454 NW2d 610 (1990), is inapposite to this case. In *Temple*, this Court found it unreasonable to award an attorney fee based on a contingent-fee agreement as part of actual costs in assessing mediation sanctions under MCR 2.403(O) because it worked out to more than $1,000 an hour. *Temple, supra* at 332-333. But MCR 2.403(O)(6)(b) explicitly requires that a reasonable attorney fee under the rule be determined on

the basis of a reasonable hourly or daily rate determined at the trial court's discretion. There is no such restriction on reasonable attorney fees awarded under MCL 500.3148(1). In determining a reasonable attorney fee under the statute, the trial court may consider a contingent-fee agreement. MRPC 1.5(a)(8); *Liddell, supra* at 652.

Finally, defendant's claim that the trial court erred when it considered time plaintiff's attorney worked after defendant had paid the claim is without merit. It is true that MCL 500.3148(1) only permits the award of an attorney fee for collecting an overdue benefit, and, once paid, benefits are no longer overdue. *McKelvie v Auto Club Ins Ass'n*, 459 Mich 42, 48-49; 586 NW2d 395 (1998). But in this case, plaintiff's attorney testified that 30 hours were devoted to collecting the overdue benefits that were fully paid on January 20, 2006. During her cross-examination of plaintiff's counsel, defense counsel sought and obtained confirmation that plaintiff's counsel worked 30 hours up to January 2006. Defense counsel also used this figure, 30 hours, to argue that the attorney fee requested amounted to an award of $1,600 an hour. The trial court, in stating its reasons for its determination of a reasonable attorney fee, also noted that plaintiff's attorneys worked 30 hours on the case. More importantly, because the trial court determined that the contingent-fee agreement between plaintiff and its counsel established a reasonable attorney fee in this case, given all the facts and circumstances, the number of hours plaintiff's counsel actually worked was not a critical factor in determining a reasonable attorney fee. Thus, the only important question is whether the trial court abused it discretion by determining that the contingent fee in this case was a reasonable attorney fee under MCL 500.3148(1). For the reasons already discussed, we conclude that the

trial court did not abuse its discretion by awarding the contingent fee as a reasonable attorney fee: it is within the range of reasonable and principled outcomes.

We affirm.

DONOFRIO, P.J., concurred.

HOEKSTRA, J. (*dissenting*). I respectfully dissent from the majority's conclusion that defendant's delay in making personal protection insurance (PIP) benefit payments to plaintiff was unreasonable.

Kimberly Sterling, defendant's insured, suffered severe brain injuries when her boyfriend allegedly pushed her from a moving motor vehicle. Defendant denied plaintiff's claim for PIP benefits. It claimed that, because Sterling's injuries were caused by a criminal assault, her injuries were exempt from no-fault coverage under MCL 500.3105(4). Plaintiff filed the present action, challenging the propriety of defendant's denial of PIP benefits. After a jury acquitted Sterling's boyfriend of assault, defendant paid the PIP benefits. Thereafter, plaintiff, claiming that defendant's delay in paying the PIP benefits was unreasonable, moved for attorney fees under MCL 500.3148(1). The trial court held that defendant's delay was unreasonable, and it awarded attorney fees to plaintiff. This appeal ensued.

In my opinion, the controlling issue in the present case is whether the trial court erred in holding that defendant's initial denial of plaintiff's claim for PIP benefits was unreasonable. Since submission of this case for decision, our Supreme Court has decided *Ross v Auto Club Group*, 481 Mich 1; 748 NW2d 552 (2008). In *Ross*, the Court held that the plaintiff, the sole employee and shareholder of a subchapter S corporation that lost more money than it paid in wages, was

entitled to work-loss benefits under MCL 500.3107(1)(b).
*Id.* at 7-8. Nonetheless, the Court held that the defendant's initial refusal to pay the work-loss benefits was not unreasonable and, therefore, the plaintiff was not entitled to attorney fees under MCL 500.3148(1). *Id.* at 15. In its opinion, the Court stated:

> The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured. Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.
>
> The trial court correctly set forth this rule of law in determining that plaintiff was entitled to attorney fees. The issue is whether it clearly erred in applying this rule and finding that defendant's refusal was not based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. The determinative factor in our inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable. [*Id.* at 11.]

The Court determined that the defendant's denial of work-loss benefits was reasonable because the "[d]efendant [had] relied on a factually similar Court of Appeals decision to adopt a reasonable position on an issue of first impression." *Id.* at 15. For this same reason, I would reverse the award of attorney fees in the present case.

If defendant had not paid the PIP benefits after Sterling's boyfriend was acquitted of assault and we were forced to decide whether defendant was responsible for paying PIP benefits, we would be addressing an issue of first impression. Plaintiff's attorney acknowledged at oral argument that no Michigan case has addressed the issue of no-fault coverage in the factual

context presented here, and the majority's extensive analysis confirms it. Further, in addressing assaults in motor vehicles occurring in different factual circumstances, the Supreme Court held that no-fault benefits were not available to the assault victims. See *Bourne v Farmers Ins Exch*, 449 Mich 193; 534 NW2d 491 (1995); *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986). In addition, the Court in *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 222; 580 NW2d 424 (1998), stated that "assaults occurring in a motor vehicle are not closely related to the transportational function of a motor vehicle."

I acknowledge that these precedents are distinguishable and, therefore, are not controlling regarding whether defendant would be ultimately responsible for paying PIP benefits. "However, the inquiry is not whether defendant is responsible for the benefits, but only whether defendant's refusal to pay them was unreasonable." *Ross, supra* at 14. Here, I would conclude that it was reasonable, particularly in light of *McKenzie*'s apparent blanket statement of exempting from no-fault coverage all injuries resulting from an assault occurring in a motor vehicle, for defendant to maintain that Sterling's injuries were exempt from no-fault coverage.

I would reverse.