*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIYAA JOSEPH,

        Plaintiff-Appellant,

and

HEALTHCARE IMAGING PARTNERS, LLC,
doing business as MRI CENTERS OF MICHIGAN,
ESSENTIAL SPINE INTERVENTIONS, LLC,
MICHIGAN'S CRNA STAFFING, DETROIT
ANESTHESIA GROUP, PLLC, and
PERFORMANCE ORTHOPEDICS,

        Intervening Plaintiffs,

v

NATIONAL GENERAL INSURANCE
COMPANY, also known as INTEGON NATIONAL
INSURANCE COMPANY, PROGRESSIVE
MICHIGAN INSURANCE COMPANY, KINA
TRUCKING, INC., and MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

        Defendants-Appellees,

and

NATIONAL TRANSPORTATION ASSOCIATES,

        Defendant.

FOR PUBLICATION
April 29, 2025
10:56 AM

No. 364798
Wayne Circuit Court
LC No. 21-003381-NF

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

N. P. HOOD, P.J.

In this case arising under Michigan's no-fault act, MCL 500.3101 *et seq.*, plaintiff, Diyaa Joseph, appeals by right the trial court's amended opinion and order granting summary disposition in favor of defendants, Progressive Michigan Insurance Company (Progressive) and National General Insurance Company, also known as Integon National Insurance Company (National General), under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This action for personal protection insurance (PIP) benefits arose from two incidents that occurred in March 2020. At the time, Joseph was employed as a commercial truck driver by defendant, Kina Trucking, Inc. (Kina Trucking). Progressive issued an automobile insurance policy to Kina Trucking that included coverage for a Freightliner semitruck. National General issued an automobile insurance policy to Joseph—a Michigan resident—that included coverage for two personal vehicles.

Joseph drove the Freightliner semitruck from Michigan to Texas to deliver goods on behalf of Kina Trucking. While in Effingham, Illinois, Joseph stopped at a truck stop. He put the vehicle in park, turned off the engine, and slept in the attached sleeper berth. The following morning, while Joseph was asleep in sleeper berth, what he described as a "sharp impact" shook the vehicle. Joseph fell out of the sleeper berth and onto his right side. After exiting the vehicle, he discovered that its front bumper had been damaged. He believed that a nearby Volvo semitruck driven by Maurice Bloomfield and owned by AJ Capital, Inc. caused the damage.

In what began as an effort to photograph its license plate, Joseph approached the Volvo semitruck from roughly 200 feet away. As Joseph approached, the Volvo semitruck began moving toward him, and another semitruck began moving toward him from the opposite direction. Joseph feared that one of the semitrucks was going to hit him and wished to prevent Bloomfield from fleeing. While the Volvo semitruck was in motion, Joseph stepped onto its running board, held onto its side mirror, and instructed Bloomfield to stop. Bloomfield accelerated and applied the brakes multiple times. Joseph eventually fell to the ground and allegedly sustained multiple injuries. Bloomfield then left the truck stop and drove away. Afterward, Joseph completed his delivery on behalf of Kina Trucking and returned to Michigan, where he received medical treatment for injuries he allegedly sustained during the incidents.

In March 2021, Joseph filed suit against Progressive, National General, and the Michigan Automobile Insurance Placement Facility (MAIPF), claiming that one or more of them were responsible for the payment of PIP benefits on his behalf. Joseph also filed suit against Kina Trucking, alleging that it failed to maintain required automobile insurance coverage on the Freightliner semitruck. Progressive, National General, the MAIPF, and Kina Trucking answered the complaint and denied liability.[1] Progressive and National General filed affirmative defenses,

---

[1] Defendant, National Transportation Associates, Inc., was also named in the complaint. It appears National Transportation Associates, Inc. was not served with the complaint, as neither an appearance nor an answer appears in the lower court record.

neither of which addressed the theories that Joseph intentionally caused his own injuries or that Bloomfield intentionally caused Joseph's injuries. Joseph's claims against the MAIPF and Kina Trucking were dismissed during litigation.[2]

In November 2021, Progressive moved for summary disposition. With respect to the first collision, Progressive argued that under MCL 500.3106(1)'s parked-vehicle exception, it had no duty to pay PIP benefits related to injuries Joseph allegedly sustained when he fell from the sleeper berth because they did not arise out of his use of the vehicle as a motor vehicle. With respect to the second accident, Progressive argued that under MCL 500.3114(3), it owed no duty to pay PIP benefits related to injuries Joseph allegedly sustained when he fell from the Volvo semitruck because Joseph was not occupying a vehicle owned by Kina Trucking when the accident occurred.

In December 2021, National General moved for summary disposition. Like Progressive, National General argued that under the parked-vehicle exception, it had no duty to pay PIP benefits related to injuries Joseph allegedly sustained when he fell from the sleeper berth because his injuries did not arise out of his use of the vehicle as a motor vehicle. National General also argued that it had no duty to pay PIP benefits related to injuries Joseph allegedly sustained in the second incident because Joseph intentionally caused his own injuries, and Bloomfield used the Volvo semitruck as a weapon rather than a motor vehicle.

In response to both motions, Joseph argued MCL 500.3106 did not apply because the first collision involved a moving vehicle, which triggered MCL 500.3105(1). Joseph did not address Progressive's arguments regarding MCL 500.3114(3). According to Joseph, genuine issues of material fact remained as to both his and Bloomfield's intent related to the second incident.

After oral argument, the trial court granted summary disposition in favor of Progressive and National General. Later, in an amended order dated October 27, 2022, and a subsequent opinion dated November 9, 2022, the trial court dismissed Joseph's claims against Progressive and National General under MCR 2.116(C)(10). Joseph unsuccessfully moved for reconsideration, and this appeal followed.

## II. STANDARDS OF REVIEW

We review de novo issues involving the proper interpretation and application of statutes and court rules. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023). "We also review de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim County*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). "De-novo review means that we review the legal issue independently, without deference to the

---

[2] Essential Spine Interventions, LLC; Michigan's CRNA Staffing; Detroit Anesthesia Group, PLLC; and Healthcare Imaging Partners, LLC, doing business as MRI Centers of Michigan, successfully moved to intervene as assignees of Joseph. This case was consolidated with a different case initiated by Performance Orthopedics of Michigan, another assignee of Joseph. The trial court dismissed intervening plaintiffs' claims against Progressive and National General. Those decisions have not been appealed by intervening plaintiffs.

lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019) (emphasis, quotation marks, and citations omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition . . . ." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Summary disposition is suspect where motive and intent are at issue or where the credibility of a witness is crucial." *Foreman v Foreman*, 266 Mich App 132, 135; 701 NW2d 167 (2005) (citation omitted).

## III. LAW AND ANALYSIS

### A. THE FIRST COLLISION

Joseph argues that the trial court erred by granting summary disposition in favor of Progressive and National General on his claim for PIP benefits related to the first collision, which occurred while he was inside the Freightliner semitruck. We agree. Even though the first collision involved a parked vehicle (i.e., the Freightliner semitruck), Joseph was entitled to no-fault benefits under MCL 500.3105 because his injuries arose out of *Bloomfield's* operation of a motor vehicle (i.e., the Volvo semitruck). See *Kalin v Detroit Auto Inter-Ins Exch*, 112 Mich App 497, 500-501; 316 NW2d 467 (1982).[3] The trial court erred when it analyzed the first collision by focusing on the Freightliner semitruck through the lens of MCL 500.3106 (the parked-vehicle exception) instead of focusing on the Volvo semitruck through the lens of MCL 500.3105 (ownership, operation, maintenance, or use). See *Kalin*, 112 Mich App at 500.

"The purpose of the Michigan no-fault act is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." *Iqbal v Bristol West Ins Group*, 278 Mich App 31, 37; 748 NW2d 574 (2008). "The no-fault act provides a comprehensive scheme for payment, as well as recovery, of certain no-fault benefits, including personal protection insurance benefits." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 479; 960 NW2d 186 (2020) (quotation marks and citation omitted). Subject to the provisions of the no-fault act, a personal protection insurer "is liable to pay benefits for accidental bodily injury arising out of the

---

[3] Although *Kalin* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, see *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 372 n 3; 1 NW3d 373 (2022), as a published opinion, it is nevertheless binding under the rule of stare decisis. See MCR 7.215(C)(2).

ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). This inquiry turns on whether accidental bodily injury is "closely related to the transportational function of a motor vehicle." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 222; 901 NW2d 534 (1998).

"[W]hen an injury involves a parked motor vehicle, coverage is *generally* excluded unless the claimant demonstrates that one of three statutory exceptions applies." *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017), citing MCL 500.3106(1) (emphasis added). These statutory exceptions are set forth in MCL 500.3106(1), which provides that accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked motor vehicle as a motor vehicle unless: (1) the vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred, (2) the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process, or (3) the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. See MCL 500.3106(1).

Here, the threshold question is whether Joseph's injuries during the first collision entitle him to benefits under MCL 500.3105. See *Davis v Auto Owners Ins Co*, 116 Mich App 402, 408-409; 323 NW2d 418 (1982). When accidental bodily injury results from a collision between a moving motor vehicle being used or operated as such and a parked motor vehicle, MCL 500.3105 applies. See *Kalin*, 112 Mich App at 500-502. This Court has previously recognized that such injury necessarily arises out of the operation of a vehicle—namely, the moving vehicle—as a motor vehicle. See *Davis*, 116 Mich App at 408-409. See also *Kalin*, 112 Mich App at 500-502.[4] In *Kalin*, this Court explained:

> Recently, in *Gutierrez v Dairyland Ins Co*, 110 Mich App 126; 312 NW2d 181 (1981), this Court addressed a similar situation involving a parked vehicle and a moving vehicle. According to *Gutierrez*, where a claimant suffers accidental bodily injury arising out of the ownership, operation, maintenance, or use of a moving motor vehicle as a motor vehicle, the additional involvement of a parked vehicle is irrelevant to the issue of whether such a claimant is entitled to recover no-fault benefits. Under this approach, analysis of an accident under the parked vehicle exclusion is unnecessary unless there is no causal connection between the use, etc., of a moving vehicle and the injury. Clearly, the Legislature did not intend the parked vehicle exclusion to apply to accidents involving both a parked vehicle and a moving vehicle except where the involvement of the moving vehicle is merely incidental or fortuitous. [*Kalin*, 112 Mich App at 500-501 (footnotes omitted).]

Put differently, when a moving vehicle hits a parked vehicle, generally there is no need to engage with the parked-vehicle exception—MCL 500.3105 applies. See *Kalin*, 112 Mich App at 500-501

---

[4] In *Clute v Gen Accident Assurance Co of Canada*, 428 Mich 871 (1987), our Supreme Court cited with approval a dissenting opinion authored by H. HOOD, J., which cited *Kalin*, 112 Mich App at 500-502, for this same premise. See *Clute v Gen Accident Assurance Co of Canada*, 142 Mich App 640, 644; 369 NW2d 864 (1985) (H. HOOD, J., dissenting).

(stating the general rule and noting the exception "where the involvement of the moving vehicle is merely incidental or fortuitous"). This conclusion is consistent with the language of MCL 500.3105(1), which does not condition a personal protection insurer's liability on *the injured person's* ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. See MCL 500.3105(1) (providing that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."). Rather, MCL 500.3105(1) simply conditions a personal protection insurer's liability on *the* ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. See *id*.

Here, Joseph presented evidence that he was asleep inside of the parked Freightliner semitruck's sleeper berth when the Volvo semitruck struck the motor vehicle. The impact caused Joseph to fall out of the sleeper berth and onto his right side, resulting in alleged injuries. Joseph's injuries arose at least in part out of Bloomfield's operation of the Volvo semitruck as a motor vehicle. See *McKenzie*, 458 Mich at 221 ("moving motor vehicles are quite obviously engaged in a transportational function."). This case would be different if Joseph's injuries arose out of him simply rolling out of the sleeper birth. Here, there is evidence that his injuries arose out of the operation of the Volvo semitruck and its collision with the Freightliner semitruck. Joseph therefore established a genuine issue of material fact regarding his entitlement to no-fault benefits under MCL 500.3105(1), and the trial court erred by granting summary disposition in favor of Progressive and National General in relation to the collision that occurred while Joseph was inside the Freightliner semitruck.

Having reached this conclusion regarding the first collision, on remand, the trial court must determine the priority of the two insurers. The trial court did not address this issue due to its handling of the first collision.

## B. THE SECOND INCIDENT

Joseph next argues that the trial court erred by granting summary disposition on his claim for PIP benefits arising from alleged injuries he sustained upon falling from the Volvo semitruck. Joseph abandoned any claim of error in relation to Progressive. We, however, agree that the trial court erred by granting summary disposition in favor of National General related to the second incident.

## 1. PROGRESSIVE

Upon granting summary disposition in favor of Progressive, the trial court concluded that Progressive lacked a duty to pay PIP benefits on Joseph's behalf because the Volvo semitruck was neither owned nor insured by Kina Trucking. See MCL 500.3114(3) ("An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits . . . from the insurer of the furnished vehicle."). Joseph does not challenge or otherwise address the trial court's conclusion in his appellate brief. He has therefore abandoned any claim of error in this regard, and we decline to address the merits of the issue. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.") (Citation omitted).

## 2. NATIONAL GENERAL

When an individual is injured in a motor vehicle accident, they must pursue a claim for PIP benefits from insurers according to the listed order of priority. *Griffin v Trumbull Ins Co*, 509 Mich 484, 498; 983 NW2d 760 (2022). The general rule is that one looks to their own insurer for no-fault benefits unless a statutory exception applies. *Id*. Here, National General does not dispute that it insured two of Joseph's vehicles. Instead, it argues that the trial court properly granted summary disposition in its favor because Bloomfield utilized the Volvo semitruck as a weapon rather than a vehicle, and Joseph did not suffer accidental bodily injury within the meaning of the no-fault act. We disagree and address both of these arguments in turn.

Under Michigan law, one's recovery of PIP benefits may be limited or precluded when their injury arises from an assault and battery or other criminal behavior. For example, in *Thornton v Allstate Ins Co*, 425 Mich 643, 660-661; 391 NW2d 320 (1986), our Supreme Court held that injuries sustained by a taxi driver in the course of an armed robbery did not arise out of the use of a motor vehicle as a motor vehicle. It explained that the taxi was merely the location of the taxi driver's injuries, which did not arise from the "functional use of a motor vehicle as a motor vehicle." *Id*. at 661. And it concluded that, while robbery-related injuries were arguably foreseeable in the commercial operation of the motor vehicle, they were merely incidental to the use of the motor vehicle for transportation purposes. *Id*. In reaching its conclusion, the Court focused its inquiry on whether the taxi driver's injuries were causally related to the "vehicular use" or "functional character" of the motor vehicle. *Id*. at 660.

Similarly, in *Bourne v Farmers Ins Exch*, 449 Mich 193; 534 NW2d 491 (1995), our Supreme Court held that the plaintiff's injuries, which arose from being "struck" by a carjacker's fist, did not arise out of the use of a motor vehicle as a motor vehicle. *Id*. at 201. The Court explained that the "plaintiff's vehicle was at best the situs of the injury, which is not a sufficient condition to establish the requisite causal connection between the injury and the vehicle." *Id*. at 200.

In *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 696-697; 760 NW2d 574 (2008), overruled in part on other grounds by *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 271-283; 884 NW2d 257 (2016), we distinguished the analyses in *Thornton* and *Bourne* from circumstances in which a claimant sustained injuries upon jumping or being pushed from a moving vehicle. We explained:

> [T]he essence of *Thornton* and *Bourne* is that where a motor vehicle is merely the location of an assault or a backdrop of an assault, there is insufficient connection between the injuries and the use of a motor vehicle as a motor vehicle to impose liability for PIP benefits under MCL 500.3105(1). There is, however, no rule precluding PIP benefits for injuries resulting from an assault.
>
> * * *
>
> [The claimant's] injuries were a direct result of the vehicle's movement, not merely incidental to it. Unlike getting out of a stopped car, getting out of a car while it is being driven is extremely hazardous and likely to result in injury.

Whether [the claimant] was pushed or stepped out, her head trauma was patently the direct result of her getting or being forced out of a moving vehicle, not simply a direct result of being shoved by the driver (if that actually occurred). Thus, even if there had been an assault, [the claimant's] injuries would still be a direct result of being forced out of a moving vehicle. This means that the vehicle was not merely the location of an assault: The use of the motor vehicle for transportation was closely related to, and indeed was a direct, active cause of, [the claimant's] injuries. So, regardless of whether she was shoved out or voluntarily got out of the vehicle, there is no evidence that [the claimant] intended to hurt herself, and her injuries were directly related to the use of the vehicle as a mode of transportation. [*Id*. at 697-698.]

This case is distinguishable from *Thornton* and *Bourne* and akin to *Univ Rehab Alliance, Inc* because Joseph's alleged injuries occurred when he fell from a moving vehicle used for transportation. See *Univ Rehab Alliance, Inc*, 279 Mich App at 697 ("moving motor vehicles are quite obviously engaged in a transportational function." (Quotation marks and citation omitted.)). The Volvo semitruck was not merely the location of an assaultive crime. Rather, Joseph's injuries occurred while Bloomfield used the Volvo semitruck as a mode of transportation.

As for whether Joseph's alleged injuries were caused by his own intentional acts or the intentional acts of Bloomfield, an insurer is only liable for PIP benefits attributable to "*accidental* bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle[.]" MCL 500.3105(1) (emphasis added). Under the no-fault act, bodily injuries are considered accidental "unless suffered intentionally by the injured person or caused intentionally by the claimant." MCL 500.3105(4). Yet "[e]ven though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself." *Id*.

"One acts intentionally if he intended both the act *and* the injury." *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 226; 553 NW2d 371 (1996). "The subjective intent of an actor is the focus of determining whether the actor acted intentionally." *Id*. Intent may be inferred from the facts, *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 202; 536 NW2d 784 (1995), and "need not be proven by direct evidence," *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 12; 596 NW2d 620 (1999) (quotation marks and citation omitted). In other words, "questions concerning the state of one's mind, including intent, motivation, or knowledge can be proven by circumstantial evidence." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). Circumstantial evidence is evidence that would "facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994), reh den 445 Mich 1233 (1994). To be circumstantial evidence of causation, the facts or conditions require "a reasonable likelihood of probability rather than a possibility," and "such evidence must exclude other reasonable hypotheses with a fair amount of certainty." *Id*. at 166 (quotation marks omitted). "[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to" grant judgment as matter of law. *Id*. at 165 (quotation marks and citation omitted).

"Frequently, the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor." *Cipri*, 235 Mich App at 12 (quotation marks and citations omitted). An actor's intent may be gleaned from "the natural consequences of his deeds." *Id*. Stated differently, "where the injury or resulting death is the natural, anticipated and expected result of an intentional act, courts may presume that both act and result are intended." *Mattson v Farmers Ins Exchange*, 181 Mich App 419, 424; 450 NW2d 54 (1989) (quotation marks and citation omitted).

Viewing the evidence in a light most favorable to Joseph, there are genuine issues of material fact as to whether Joseph intentionally caused his own alleged injuries and whether Bloomfield intentionally caused Joseph's alleged injuries. Joseph testified that he approached the Volvo semitruck from roughly 200 feet away. He observed Bloomfield driving toward him while another vehicle was moving toward him from the opposite direction. Joseph feared that one of the vehicles was going to hit him and wished to prevent Bloomfield from fleeing, prompting him to step onto the Volvo semitruck's running board as the vehicle passed. Although Bloomfield accelerated and applied the brakes multiple times while Joseph stood on the running board, Joseph opined that Bloomfield did so in an attempt to flee the truck stop. Given these circumstances, reasonable fact-finders could conclude that neither Joseph nor Bloomfield intentionally caused Joseph's alleged injuries.

## C. ALLEGED WAIVER OF DEFENSES AND AFFIRMATIVE DEFENSES

Finally, Joseph argues that summary disposition was improper because Progressive and National General did not plead as specific or affirmative defenses that Bloomfield intentionally caused his alleged injuries or Joseph intentionally caused his own alleged injuries. Joseph contends that Progressive and National General waived these defenses by failing to plead them under MCR 2.111(F)(2) and (3). However, Joseph failed to raise this issue before the trial court, rendering it unpreserved. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

This Court has historically applied two different standards to unpreserved issues in the civil context: plain error, see, e.g., *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022); *Demski v Petlick*, 309 Mich App 404, 426-427, 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194 & n 5; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledg[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294; 14 NW3d 472 (2023) (holding that our Supreme Court requires application of the so-called raise-or-waive standard in the civil context). Although we may overlook preservation requirements under certain circumstances, we decline to do so here. We therefore conclude that Joseph waived this claim of error.

## IV. CONCLUSION

We reverse the trial court's decision to grant summary disposition in favor of Progressive and National General in relation to the collision that occurred while Joseph was inside the Freightliner semitruck. We likewise reverse the trial court's decision to grant summary disposition in favor of National General in relation to the Volvo semitruck incident. However, we affirm the trial court's decision to grant summary disposition in favor of Progressive in relation to the Volvo semitruck incident. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica